1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BARTHEL & BARTHEL, APC**
Nicholas Barthel, Esq. (319105)
nick@barthelbarthel.com
2173 Salk Ave., Ste. 250
Carlsbad, CA 92008
Telephone: (760) 259-0033
Facsimile: (760) 536-9010

*Attorneys for Plaintiff,*
Gabriel Llamas

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**GABRIEL LLAMAS,**

     Plaintiff,

     v.

**T-MOBILE USA, INC; ENHANCED RECOVERY COMPANY, LLC; TRANS UNION LLC; AND, EXPERIAN INFORMATION SOLUTIONS, INC.,**

     Defendants.

**Case No.:** '22CV0073 W    WVG

**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**

   I.    **FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 1681, *ET SEQ.*;**

   II.   **FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. §§ 1692, *ET SEQ.*,**

   III.   **ROSENTHAL FAIR DEBT COLLECTION PRACTICES, CAL. CIV. CODE § 1788, *ET SEQ.*; AND,**

   IV.   **CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, CAL. CIV. CODE § 1785.1, ET SEQ.**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1.  The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.  Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2.  In addition, the United States Congress has also found that the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.  As such, Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") to insure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.  The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

///
///
///
///

3.  The California legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers.  The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty, and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.[1]

4.  GABRIEL LLAMAS ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of T-MOBILE USA, INC ("T-Mobile"), ENHANCED RECOVERY COMPANY, LLC ("ERC"), TRANS UNION LLC ("Trans Union"), and EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") (or collectively "Defendants").

5.  Each Defendant independently reported erroneous negative and derogatory information on Plaintiff's credit report following Plaintiff's successful Chapter 7 discharge.

6.  Specifically, Plaintiff challenges T-Mobile and ERC's attempts to unlawfully and abusively collect a debt allegedly owed by Plaintiff, and this conduct caused Plaintiff damages.

7.  Plaintiff also brings this action to challenge Trans Union's and Experian's inaccurate reporting of a debt that they knew had been discharged in bankruptcy.

8.  Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a plaintiff, or to a plaintiff's counsel, which

---

[1] Cal. Civ. Code §§ 1788.1 (a)-(b)

Plaintiff alleges on personal knowledge.

9. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

10. Unless otherwise stated, all the conduct engaged in by Defendant took place in California.

11. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

12. Unless otherwise indicated, the use of each Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant's named.

## JURISDICTION AND VENUE

13. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681p; and, 28 U.S.C. § 1367 for supplemental state claims.

14. This action arises out of Defendants' respective violations of (i) the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788.17 ("RFDCPA"); (ii) Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA"); (iii) the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.1, et seq. ("CCCRAA"); and, (iv) Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq. ("FDCPA").

15. Because Defendants conduct business within the State of California, personal jurisdiction is established.

16. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of San Diego, State of California which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendants conducted business within this judicial

1

district at all times relevant.

2

**PARTIES**

3

17. Plaintiff is a natural person who resides in the City of Chula Vista, County of San Diego, State of California, from whom various debt collectors sought to collect a consumer debt which was or was alleged to be due and owing from Plaintiff.

4

5

6

7

18. Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(c); 15 U.S.C. § 1692a(3); and, 15 U.S.C. § 1681a(c).

8

9

19. T-Mobile is a corporation formed under the laws of the State of Delaware, with headquarters and principal place of business in Bellevue, Washington, that serves as the American operating arm of T-Mobile International AG & Co., a corporate entity based in Germany.

10

11

12

13

20. ERC is a limited liability company with its principal place of business in Florida.

14

15

21. Trans Union is a company operating from the State of Delaware.

16

22. Experian is a company operating from the State of California.

17

23. T-Mobile and ERC are furnishers of information as contemplated by FCRA sections 1681s-2(a) & (b) and "person" as defined by Cal. Civ. Code § 1785.3(j), that regularly and in the ordinary course of business furnish information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

18

19

20

21

22

24. Experian and Trans Union are each a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f) ("Credit Bureaus").

23

24

25. The causes of action herein also pertain to Plaintiff's "consumer credit report" as that term is defined by Cal. Civ. Code § 1785.3(c) and "consumer report" as defined by 15 U.S.C. § 1681a(d), in that inaccurate representations of Plaintiff's credit worthiness, credit standing, and credit capacity were made via written,

25

26

27

28

oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

### FACTUAL ALLEGATIONS

26. At all times relevant, Plaintiff is an individual residing within the State of California.

27. Plaintiff filed for Chapter 7 Bankruptcy on August 24, 2018, in the United States Bankruptcy Court for the Southern District of California in San Diego (Case No. 18-05051-LT7).

28. Sometime before August 2018, Plaintiff allegedly incurred a debt to T-Mobile ("Debt").

29. The Debt was scheduled and included in the Bankruptcy.

30. T-Mobile, ERC and the Credit Bureaus, automatically received notice of the Bankruptcy filing through a Court Certificate of Mailing with Service by the Bankruptcy Noticing Center.

31. Plaintiff received a successful bankruptcy discharge on November 27, 2018.

32. Again, T-Mobile, ERC and the Credit Bureaus, automatically received notice of the Bankruptcy discharge through a Court Certificate of Mailing with Service by the Bankruptcy Noticing Center.

33. Defendants did not file any successful proceedings to declare their Debt "non dischargeable" pursuant to 11 U.S.C. § 523 *et seq*.

34. Defendants also did not request or receive relief from the "automatic stay" codified at 11 U.S.C. §362 *et seq.* while Plaintiff's Bankruptcy was pending to pursue Plaintiff for any of the underlying Debts in their pre-bankruptcy form.

//

35. Accordingly, all Debts identified herein were discharged through the Bankruptcy.

36. Despite this, on or about late 2019, Plaintiff received a phone call from a debt collector stating that it was attempting to collect the Debt on T-Mobile's behalf.

37. Plaintiff called T-Mobile to inform them that the Debt had been discharged in bankruptcy. Plaintiff also sent T-Mobile the discharge order showing that the debt had been discharged in bankruptcy. T-Mobile apologized for the mistake and stated that they "would note it in their accounts."

38. On or about September 10, 2021, Plaintiff was attempting to purchase a new mattress. After picking out the mattress that he wanted, Plaintiff applied to be in a buy-now-pay-later credit through Synchrony Bank.

39. However, he was informed that he was denied due to a delinquent payment on his account. Plaintiff was confused as he has been attentive to his credit since his bankruptcy.

40. When Plaintiff checked his credit report it showed that Trans Union was reporting that ERC was furnishing that Plaintiff had an account that was "placed for collection" and that the original creditor was T-Mobile. The outstanding balance was alleged to be $491.

41. Despite knowing that this debt has been discharged, T-Mobile yet again sent it out for collections.

42. Similarly, Experian was also reporting that Plaintiff had an account with the original creditor T-Mobile that was "Seriously past due date/assigned to attorney, collection agency". The outstanding balance for this debt was also $491.

43. On or about September 14, 2021, Plaintiff disputed the amount through the Experian mobile app. Finally, Defendants removed the derogatory information from Plaintiff's credit report or stopped furnishing information regarding the

Debt to credit reporting agencies.

44. Defendants erroneously reported the Debt to Plaintiff's credit report as Plaintiff's individual responsibility.

45. Due to receiving notice from Plaintiff discharge and previous 2019 dispute, Defendants should have known that their reporting of this debt was erroneous.

46. While the automatic stay was in effect during the Bankruptcy, it was illegal and inaccurate for Defendants to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court, including the initial Petition for Relief for Bankruptcy protection, the automatic stay, and the Discharge Order (collectively the "Bankruptcy Orders").

47. Defendants either reported or caused to be reported inaccurate information after the Bankruptcy was filed *and* discharged, in the form of reporting the *current* account (pay) status of the Debt as being "charged off", or some other continuing financial obligation, as opposed to "Discharged in Bankruptcy" (or the equivalent).

48. The derogatory information reported by Defendants after the Bankruptcy was discharged indicates to potential creditors that the Debt was somehow not discharged in the Bankruptcy and Plaintiff was being actively delinquent in respect to each Debt, which is inaccurate and materially misleading reporting.

49. Defendants' reporting of post-Bankruptcy derogatory information was also inaccurate because a default on an account included in a bankruptcy can occur no later than the bankruptcy filing date, at which point the accounts included in the Bankruptcy were no longer collectable due to the effect of the automatic stay and ultimate discharge.

50. Thus, by reporting post-Bankruptcy derogatory information, Defendants effectively reported: (1) Plaintiff was being financially irresponsible by failing

to pay the debt *after* the Bankruptcy was discharged; and (2) that Plaintiff's Debt was more recently subject to collection than it really was, which is inaccurate and misleading under the FCRA and CCCRAA.

51. Defendants' attempts to collect upon the Debt by reporting post-Bankruptcy derogatory information on Plaintiff's Credit Reports, which is a collection activity, was therefore inaccurate and materially misleading.

52. Defendants' reporting of post-Bankruptcy derogatory information was also inaccurate and materially misleading because Defendants continued reporting information based on Defendants' pre-bankruptcy contract terms with Plaintiff, which were no longer enforceable upon the filing of the Bankruptcy and ultimate successful discharge, thereby rendering the disputed information inaccurate and materially misleading.

53. For decades, courts have recognized that when a bankruptcy discharge is granted, the order relates back to the date of filing the petition and relieves the debtor from personal liability as of this date.

54. This is because when a debtor voluntarily files for bankruptcy, the petition constitutes an "order for relief" under the particular chapter the debtor wishes to proceed per Bankruptcy Code 11 U.S.C. § 301(a)-(b).

55. When a debtor such as Plaintiff files a chapter 7 petition, Section 727(b) of the Bankruptcy Code provides that the discharge, when entered, applies to "all debts that arose *before the date of the order for relief*." In other words, the discharge relieves the debtor of personal liability for all prepetition debts.

56. Thus, in relation to the FCRA and CCCRAA, the discharge order rendered the information reported by Defendants following the bankruptcy discharge inaccurate and patently misleading because the discharge order relieved Plaintiff from any personal obligation to pay any debts as of the date of filing the Bankruptcy petition.

57. Moreover, the derogatory, delinquent information furnished by Defendants following the Bankruptcy Discharge was inaccurate and misleading because end users, including potential creditors, may interpret the reported information to mean that Plaintiff incurred new debt during the Bankruptcy or that Plaintiff reaffirmed the Debt with Defendants notwithstanding the discharge.

58. However, Plaintiff did not incur new debt with during the pendency of the Bankruptcy or reaffirm the Debt in the Bankruptcy.

59. Further, the Consumer Data Industry Association's ("CDIA") Metro 2 format is the credit industry's standardized, objective reporting format used by furnishers to provide information about consumer accounts to consumer reporting agencies.

60. Upon information and belief, Plaintiff alleges that Defendants voluntarily chose to subscribe to the Metro 2 format in their credit reporting practices to credit reporting agencies.

61. Reasonable entities, including potential creditors, would have thus expected Defendants to report in compliance with the Metro 2 format.

62. Upon information and belief, Defendants have adopted the CDIA's Metro 2 CRRG as its standard instruction book in respect to credit reporting, which instructs furnishers to update the CII indicator status of accounts discharged in Chapter 7 Bankruptcies with an "E" notation, i.e. "Discharged in Bankruptcy."

63. Potential creditors familiar with Metro 2 standard credit reporting instructions would be misled by seeing Defendants reporting a continuing financial obligation or a "Charged Off" *current* (pay) status in respect to the Debt, as opposed to "Discharged in Bankruptcy", to believe that Plaintiff incurred new debt during the Bankruptcy or that Plaintiff reaffirmed the debt notwithstanding the discharge, because T-Mobile and ERC's reporting deviated from Metro 2 reporting instructions in this respect.

64. However, Plaintiff did not incur new debt with Defendants during the Bankruptcy proceeding or reaffirm the Debt in the Bankruptcy.

65. Accordingly, by reporting this post-Bankruptcy derogatory information, Defendants did not comply with the Metro 2 format.

66. Furnishers utilizing the Metro 2 reporting standard correctly is crucial because the Metro 2 system creates a uniform standard for the meaning given to each field provided, which fosters consistency in how furnishers formulate data to report to the credit bureaus, which ultimately leads to objective credit evaluations and scores.

67. Moreover, the FCRA imposes no requirement or mandate that a furnisher provide any information to a CRA. Indeed, the CDIA has repeatedly noted that the act of furnishing information to a CRA is completely voluntary.

68. Pursuant to the Voluntary Undertakings Doctrine, found in the Second Restatement of Torts (Section 323 and 324), and as adopted by California, an undertaking once begun, which induces reliance of others for their own safety, cannot be discontinued without reasonable care to avoid increasing the risk.

69. The voluntary nature of credit reporting induces the affirmative duty by furnishers, pursuant to the CCCRAA and FCRA, to report accurately to the CRAs.

70. Credit reporting is done for the protection of other creditors extending offers of credit and for debtors being accurately portrayed to potential creditors.

71. Accordingly, once Defendants made the voluntary decision to report Plaintiff's accounts, Defendants were required to report accurately to the CRAs.

72. Plaintiff alleges that Defendants did not comply with the Metro 2 reporting standards in respect to Plaintiff's account and reported inaccurately by failing to comport their reporting practices with the implication of Plaintiff's filing of the Bankruptcy and ultimate discharge.

73. Accordingly, Defendants' non-compliance with the Metro 2 reporting standards constitutes an inaccurate or misleading statement under the FCRA and CCCRAA, because a furnisher that fails to comply with the uniform and objective Metro 2 reporting standards compromises the credit reporting system.

74. Deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if the furnisher reported in accordance with the recognized industry standard.

75. Because credit reporting is a voluntary act, Defendants' deviation from the Metro 2 format instructions—the industry standard and Defendants' chosen method of reporting—constitutes an inaccurate or misleading statement, because those making credit decisions, who would expect that furnishers like Defendants would adhere to the Metro 2 format, would view a *current* account status of "Charged Off" or an ongoing balance after a bankruptcy is discharged more negatively than "Discharged in Bankruptcy."

76. Defendants' failure to adhere to the Metro 2 format would prompt those making credit decisions to draw a more negative inference from the reporting of "collections" and "Open" than if Defendants accurately reported "Discharged through Bankruptcy" because a "collections" account status indicates that a debt is still legally collectable and a legally owed obligation.

77. Plaintiff subsequently learned that Defendants reported post-Bankruptcy derogatory credit information regarding the obligations on Plaintiff's credit reports, thereby causing erroneous and negative credit information in Plaintiff's credit files and damaging Plaintiff's creditworthiness.

78. As a direct and proximate result of result of Defendants' willful and untrue communications, Plaintiff has suffered actual damages including, but not limited to, reviewing credit reports, sending dispute letters, attorney's fees, and

such further expenses in an amount to be determined at trial.

79. As a further direct and proximate result of Defendants' acts stated herein, Plaintiff incurred pain and suffering, was impeded in seeking necessary products and services from vendors, suffered humiliation, embarrassment, anxiety, loss of sleep, emotional distress, and defamation of character.

80. Plaintiff has also refrained from obtaining further credit knowing that Defendants' inaccurate tradelines are being reported.

81. This chilling effect has precluded Plaintiff from benefiting from Plaintiff's improving credit.

82. This chilling effect has also precluded Plaintiff from improving Plaintiff's credit further by establishing new positive accounts.

83. This inability has further exacerbated Plaintiff's frustration with Defendants since Plaintiff already made the difficult decision to file a bankruptcy in the first place.

84. Defendants continued negative reporting has forced Plaintiff to unfairly suffer the burdens of a bankruptcy without any of the associated and expected benefits.

85. Namely, Plaintiff has been precluded from the fresh start that Plaintiff so desperately desires.

86. Due to this erroneous reporting, Plaintiff was required to miss work while attempting to resolve the issue.

87. Defendants continued inaccurate and negative reporting of Plaintiff's account information to Plaintiff's credit report, in light of their knowledge of the actual error, was willful.

88. Defendants continued inaccurate and negative reporting of Plaintiff's account to Plaintiff's credit report, in light of their knowledge of the actual error, was reckless.

//

89. Defendants' inaccurate and negative reporting damaged Plaintiff's creditworthiness.

90. Subsequently, Plaintiff attempted to obtain goods and/or services only available to consumers with satisfactory credit reports.

91. However, said goods and/or services were denied to Plaintiff due in part to Defendants' tradeline on Plaintiff's credit reports.

92. Said tradeline has affected Plaintiff negatively due to the reporting of an account being seriously delinquent, which has lowered Plaintiff's credit score.

93. The repeated and continuous violations described herein have caused Plaintiff unnecessary stress and anxiety.

94. Despite this knowledge, ERC and T-Mobile continued to pursue and report Plaintiff for the Debt that was discharged in bankruptcy, causing Plaintiff to suffer.

95. Despite previous removals of this inaccurate Debt, Defendants continued to misrepresent the Debt. Therefore, Plaintiff is now required to bring this suit for injunctive relief and damages.

## COUNT I

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. §§ 1692 ET SEQ (FDCPA)
### (AGAINST ERC)

96. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

97. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA.

98. Through this conduct, ERC and T-Mobile violated 15 U.S.C. § 1692e by using false, deceptive, and misleading representations in connection with the collection of Plaintiff's alleged debt.

99.  Through this conduct, ERC and T-Mobile violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, and legal status of the fraudulent debt in connection with the collection of Plaintiff's alleged debt.

100. Through this conduct, ERC violated 15 U.S.C. § 1692e(8) by communicating credit information which is known or should be known to be false in connection with the collection of Plaintiff's alleged debt.

101. Through this conduct, ERC and T-Mobile violated 15 U.S.C. § 1692e(10) by using false representations and deceptive means to collect Plaintiff's alleged debt.

102. Through this conduct, ERC and T-Mobile violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect Plaintiff's alleged debt.

103. Through this conduct, ERC and T-Mobile violated 15 U.S.C. § 1692f(1) by collecting an amount not permitted by law.

104. As a result of each and every violation of the FDCPA, Plaintiff is entitled to and seeks any actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in the amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from ERC, but not T-Mobile.

## COUNT II

### VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT
### Cal. Civ. Code §§ 1788-1788.32 (RFDCPA)
### (AGAINST ERC AND T-MOBILE)

105. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

106. Plaintiff is a "debtor" as that term is defined by Cal. Civ. Code § 1788.2(h).

107. Plaintiff is informed and believes, and thereon alleges, that ERC and T-Mobile, in the ordinary course of business, regularly, on behalf of itself or others, engage

in "debt collection" as that term is defined by California Civil Code § 1788.2(b), and is therefore a "debt collector" as that term is defined by California Civil Code § 1788.2(c).

108. The Debt is a "debt" as that term is defined by Cal. Civ. Code § 1788.2(d) that was incurred as a result of a "consumer credit transaction" as defined by Cal. Civ. Code § 1788.2(e).

109. The foregoing acts and omissions constitute numerous and multiple violations of the RFDCPA.

110. ERC and T-Mobile's FDCPA violations listed above are incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Defendant violated Cal. Civ. Code § 1788.17.

111. As a result of each and every violation of the RFDCPA, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from each Defendant except the Credit Bureaus.

**COUNT III**

**VIOLATION OF THE FAIR CREDIT REPORTING ACT**

**15 U.S.C. §§ 1681-1681X (FCRA)**

**(AGAINST CREDIT BUREAUS)**

112. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

113. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA.

114. Despite receiving notice of the discharge order from Plaintiff's bankruptcy, the Credit Bureaus still reported the Debt as being open and in collections.

115. By inaccurately reporting a discharged debt after notice and confirmation of its

discharge, Defendant failed to have reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff as required by 15 U.S.C. § 1681e(b).

116. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from Defendant.

117. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or damages of not less than $100 and not more than $1,000 and such amount as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from each Defendant.

**COUNT IV**

**VIOLATION OF THE CALIFORNIA CONSUMER CREDIT**

**REPORTING AGENCIES ACT**

**CAL. CIV. CODE § 1785.1, ET SEQ.**

**(AGAINST T-MOBILE AND ERC)**

118. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

119. The foregoing acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.

120. In the regular course of its business operations, ERC and T-Mobile routinely furnishes information to credit reporting agencies pertaining to transactions between them and their consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

121. Because ERC and T-Mobile are each a partnership, corporation, association, or other entity, and are therefore each a "person" as that term is defined by Cal.

Civ. Code § 1785.3(j), ERC and T-Mobile are and always were obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should have known that the information is incomplete or inaccurate, as required by Cal. Civ. Code § 1785.25(a).

122. Since ERC and T-Mobile received notice of the order discharging the Debt, they should have known that the Debt was discharged in bankruptcy.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered against each Defendant for:

- Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);
- Statutory damages in the amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);
- Reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);
- An award of actual damages, in an amount to be determined at trial or damages of a maximum of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), against the Credit Bureaus for each incident of willful noncompliance of the FCRA;
- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1788.30(a), against ERC and T-Mobile individually;
- An award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2), against the Bureaus for each incident of willful noncompliance to the FCRA;
- An award of statutory damages of $1,000.00, pursuant to Cal. Civ. Code § 1788.30(b), against ERC and T-Mobile individually;
- An award for costs and reasonable attorney's fees, pursuant to 15 U.S.C. §

1681n(a)(3), against the Credit Bureaus for each incident of negligent noncompliance of the FCRA;

- An award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1788.30(c), against each ERC and T-Mobile;

- An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) against the Credit Bureaus for each incident of negligent noncompliance of the FCRA;

- An award of costs and litigation and reasonable attorney's fees pursuant 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2) against the Credit Bureaus for each incident of noncompliance of the FCRA;

- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1785.31(a)(2)(A), against ERC and T-Mobile;

- Award of attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1); and, Cal. Civ. Code § 1785.31(d) against ERC and T-Mobile;

- An award of punitive damages of $100-$5,000 per willful violation of Cal. Civ. Code § 1785.25(a), pursuant to Cal. Civ. Code § 1785.31(a)(2)(B);

- For equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b); and,

- Any and all other relief the Court deems just and proper.

//
//
//
/
//
//
//

### TRIAL BY JURY

123. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: January 20, 2022                                        Respectfully submitted,


**BARTHEL & BARTHEL, APC**

By:   ___/s/ Nicholas Barthel___
NICHOLAS R. BARTHEL, ESQ.
ATTORNEY FOR PLAINTIFF